IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PATRICK MOE, | CASE NO. |
| ROBERT BLOSSER, | |
| JAMES BRATCHER, | HON. |
| WILLIAM BUKER, | **CIVIL ACTION** |
| DEAN COSGRAY, | |
| NICOLE GOULD, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES — CLASS ACTION** |
| JESSE RAY LITTLETON, | |
| CARL LYNCH, | |
| GEORGE SUPPAN, | |
| MELVIN THOMPSON, | |
| and | |
| CODY USNER, | |
| Plaintiffs, | |
| v. | |
| CITY OF AKRON, | |
| MAYOR DONALD PLUSQUELLIC (sued in his individual and official capacities), | |
| CHIEF JAMES NICE (sued in his individual and official capacities), | |
| JOHN MOORE (sued in his individual and official capacities), | |
| SGT. DOUGLAS SANDOR (sued in his individual and official capacities), | |

and

JOHN EATON (sued in his individual
and official capacities),

                   Defendants.

Plaintiffs, through their undersigned attorneys, state their Complaint against the Defendants City of Akron (the "City"), Mayor Donald Plusquellic ("Mayor Plusquellic"), Chief James Nice ("Chief Nice"), John Moore ("Mr. Moore"), Sgt. Douglas Sandor ("Sgt. Sandor"), and John Eaton ("Mr. Eaton") as follows:

## PRELIMINARY STATEMENT

1.      This is a case about a city policy designed to systematically seize and destroy Akron homeless citizens' shelters and other personal property.

2.      In a series of raids occurring between 2010 and 2014, the Akron Police Department ("APD"), with the assistance of the Akron Department of Public Service ("ADPS") and community-service crews overseen by the ADPS, seized and destroyed property without sufficient notice to Plaintiffs, or with no notice at all. These events were part of a policy and practice designed and implemented by the City.

3.      Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983, to vindicate rights protected by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiffs also bring claims for violations of Article One, Sections Fourteen, Sixteen, and Nineteen of the Ohio Constitution.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over Plaintiffs' claims for violations of their federal constitutional rights, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction)

and 28 U.S.C. § 1343(a)(3) (jurisdiction over federal constitutional claims).  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), because these claims arise out of the same set of facts as the federal claims such that all claims form part of the same case or controversy.

5.      Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

### The Plaintiffs

6.      Patrick Moe is a 45-year-old military veteran, who has been a homeless citizen in Akron for the past three years, at times living in a tent shelter.

7.      Robert Blosser is a 63-year-old man, who has been a homeless citizen in Akron for the past five years, at times living in a tent shelter.

8.      James Bratcher is a 22-year-old man, who has been a homeless citizen in Akron for about a year, at times living in a tent shelter.

9.      William Buker is a 63-year-old man, who has been a homeless citizen in Akron for the past year and a half, at times living in a tent shelter.

10.      Dean Cosgray is a 46-year-old man, who has been a homeless citizen in Akron for the past seven years, at times living in a tent shelter.

11.      Nicole Gould is a 30-year-old woman, who has been a homeless citizen in Akron for the past three years, at times living in a tent shelter.

12.      Jesse Ray Littleton is a 55-year-old man, who has been a homeless citizen for the past eleven years, at times living in a tent shelter.

13.      Carl Lynch is a 64-year-old man, who has been a homeless citizen in Akron for the past two years, at times living in a tent shelter.

14.     George Suppan is a 55-year-old man, who has been a homeless citizen in Akron for over a year, at times living in a tent shelter.

15.     Melvin Thompson is a 43-year-old man, who has been a homeless citizen in Akron area for the past two years, at times living in a tent shelter.

16.     Cody Usner is a 23-year-old man, who has been a homeless citizen in Akron for the past three years, at times living in a tent shelter.

### The Defendants

17.     Defendant City of Akron is a municipal entity.  Upon information and belief, the City is responsible for establishing policies, procedures, and training materials for the APD and ADPS.

18.     Defendant Mayor Donald Plusquellic is the mayor of the city and has so served since 1987.  He is sued in his individual and official capacities.  At all times relevant to this Complaint, he has been vested with policymaking authority for the City.  By law, executive power of the city is vested in the mayor, and the mayor has the authority to appoint and remove other city policymakers.  Ohio Rev. Code §§ 733.01; 733.03.  As the mayor, Defendant Plusquellic is recognized as the "official head of the City" by the courts.  Akron City Charter § 54.

19.     Defendant Chief James Nice is Chief of Police of the APD.  He is sued in his individual and official capacities.  At all times relevant to this Complaint, he has been vested with policymaking authority for the APD.  As Chief of Police, Defendant Nice has immediate control of the APD, including the stationing and transferring of police employees and the execution of the Mayor's rules and regulations.  Akron City Charter § 68.

4

20.     Defendant John Moore is Director of the ADPS.  He is sued in his individual and official capacities.   At all times relevant to this Complaint, Defendant Moore has been vested with policymaking authority for the ADPS.   As director, Defendant Moore has immediate control of the ADPS, including the management and supervision of "all public improvements, works and undertaking[s] in the City," including the "collection and disposal of waste."  Akron City Charter § 65.

21.     Defendant Douglas Sandor is a Sergeant of the APD.  He is sued in his individual and official capacities.

22.     Defendant John Eaton was Customer Service Administrator for the City of Akron at all times relevant to this Complaint.  He is sued in his individual and official capacities.

23.     Defendants at all relevant times and as to all relevant actions described herein were persons acting under the color of state law.

## FACTUAL ALLEGATIONS

### The Homeless in Akron

24.     The homeless in the Akron area are estimated to include between 800 and 900 people.  The population includes both an estimated 100 to 250 chronically homeless people, who have been homeless for at least a year, and sporadically homeless people.  Coalition on Homelessness and Housing in Ohio, 2013 *Ohio Homelessness Report: Abridged* 2, 4 (2013).[1]

25.     Between 2007 and 2013, the number of homeless individuals in Ohio increased by 741 people or 10.8 percent. U.S. Department of Housing and Urban

---

[1] *Available at*
https://www.cohhio.org/files/2013%20Ohio%20Homelessness%20Report.pdf.

Development, Office of Community Planning and Development, *The 2013 Annual Homeless Assessment Report (AHAR) to Congress* 17, Ex. 2.6 (2013).[2]

26.     To meet the needs of the homeless community in Akron, private charities provide tents, tarps, sleeping bags, meals, and other essentials necessary for homeless individuals to survive in the elements.  Other charities offer transitional housing and limited homeless-shelter space.

27.     For many of the homeless, the tents are their homes, providing vital protection against the elements.  Many homeless suffer from mental illness or addiction, past or present, making their sense of security critical to their daily lives.  Loss of safety, security, and items of importance are particularly harmful to the homeless population's well-being.

## The City's Policies on the Homeless

28.     Upon information and belief, beginning sometime between 2010 and 2012, business-owners in the area complained to City officials and policymakers about homeless citizens living in secluded, wooded areas on the north end of town, particularly along Furnace Street and Summit Street.  Many of these business-owners demanded that the APD and the Mayor's Office address the presence of the homeless.

29.     City policymakers designed a comprehensive strategy to restrict the activities of the homeless community.

30.     The City's strategy included:

        a.     more aggressive enforcement of loitering and trespass laws;

---

[2] *Available at* https://www.hudexchange.info/resources/documents/ahar-2013-part1.pdf.

b.     a requirement that panhandlers obtain a license and abide by greater restrictions on their activities; and

c.     an effort to "clean up" tented communities north of downtown Akron by seizing and destroying all items at those sites without providing adequate notice, or without any notice at all, to affected homeless citizens about the imminence of these seizures and destruction of their property.

**The City's Policy and Practice of Homeless Property Destruction**

31.     On information and belief, the City's policy and practice of homeless property destruction includes some number, or all, of the following steps:

a.     the APD discovers a homeless tent site, either by way of a citizen's or business-owner's complaint or an officer's patrol;

b.     the APD provides a verbal warning to homeless citizens that they should leave, or provides no warning at all;

c.     the APD and ADPS employees communicate internally about their plan to seize and destroy the property;

d.     the APD employees inform their supervisors of plans to conduct a homeless property sweep;

e.     the APD arranges for ADPS Community Service crews to provide assistance with the cleanup;

f.     the APD arranges for a City-owned dump truck or privately-owned vehicle to accompany them to the campsite, in order to transport homeless citizens' belongings directly from the campsite to a landfill; and

g.      the APD and ADPS Community Service crews arrive at a campsite, tell any homeless citizens present that they must leave but provide no information in the event the homeless citizens are not present; seize and confiscate all visible property; and transport the property to a landfill or otherwise destroy the property.

32.     On information and belief, this policy and practice does not include:

a.      notice to homeless citizens of the City's intent to seize and destroy their property;

b.      an opportunity for a hearing, either prior to the seizure or prior to the destruction of property; or

c.      any communication with the homeless property-owners of how they may reclaim any remaining property or receive compensation for property that has already been destroyed.

33.     On information and belief, Defendants typically destroyed the personal property immediately after seizure.

34.     City employees have, however, informed homeless citizens that it is permissible for them to set up their tents at some of the same sites where the City has later seized and destroyed their tents and other personal property.

## The City Ratifies Its Policy of Seizing and Destroying Homeless Citizens' Property Without Notice and a Hearing

35.     Defendants have been made aware of the policy and practice of seizing and destroying homeless citizens' property without notice and a hearing, and they have ratified it by acknowledging it.  The APD listed one of its unit's "accomplishments" for

the year 2010 as "assist[ing] with the homeless tent city eviction."  Akron Police Dept., Annual Report, at 7 (2010).[3]

36.     Defendants have been made aware of this policy and practice, and they have ratified it by failing to investigate or stop it.

37.     Defendants have authorized their agents and spokespersons to defend this policy and practice in the media.

38.     Defendant Sandor informed Defendant Nice of efforts through early 2012 to clean up—what he characterized as—"all the garbage that is in the tent city area."

39.     Upon information and belief, Defendant Plusquellic was made aware of the City's policy via complaints from the community concerning the seizure and destruction of homeless citizens' property.

40.     Akron Deputy Director of Public Safety Phil Montgomery acknowledged a city "initiative" "to relocate a homeless population as they were trespassing on railroad property" in a November 2013 e-mail to multiple city recipients, including representatives of City Planning, the APD, and the Mayor's Office, as well as the Downtown Akron Partnership consortium of businesses.

41.     On information and belief, Defendant Plusquellic reviewed and approved City spokespersons' statements to the media defending the policy and practice as implemented in November 2013.

---

[3] *Available at*
http://www.akronohio.gov/cms/resource_library/files/a1d15599114c93dd/2010_apd_annual_report.pdf.

42.     On information and belief, all Defendants were aware that the items being destroyed constituted the homeless citizens' shelters and basic living essentials, and not merely abandoned property or trash.

43.     On information and belief, the City's policy and practice of seizing and destroying homeless citizens' property without adequate or any notice continued from 2010 until the present.

44.     The City's policy and practice has resulted in the destruction of irreplaceable personal property.  The destroyed items include legal documents, identification, and military honors and awards.

45.     The City's policy and practice of destroying homeless' people's property has left numerous homeless citizens bereft of their basic essentials of life, such as sleeping bags, tents, tarps, and clothing.

## Pre-Nov. 6, 2013 Property Sweeps

46.     On information and belief, the City and its agents seized and destroyed property at 18 homeless campsites in November 2010.  The City continued this effort in the years to follow.

47.     On information and belief, the City and its agents seized and destroyed property from multiple homeless campsites on or about August 27, 2013.  Both APD and ADPS participated in the seizure and destruction, under the planning and direction of Defendant Sandor and Defendant Eaton.

48.     On information and belief, the City and its agents seized and destroyed property at multiple homeless campsites on or around September 2013.

49.     On information and belief, the City and its agents planned and executed additional homeless property sweeps between 2010 and 2013.

50.     On information and belief, numerous homeless citizens received no warning or notice before or during the aforementioned property sweeps.

51.     On information and belief, those who did receive notice that their camps were impermissible were not warned of the City's plan to seize and destroy property, nor did the notice afford any homeless citizens an opportunity to contest the planned seizure and destruction.  Rather, the "warnings" were general warnings that they should leave the site.

<u>**The Nov. 6, 2013 Property Sweeps**</u>

52.     On Nov. 6, 2013, the City and its agents executed their policy and practice by seizing and destroying numerous homeless citizens' tents and personal belongings.

53.     On information and belief, Defendants often defended the seizure and destruction of property as limited to "removal of trash" but acknowledged the presence of homeless peoples' tents.

54.     On information and belief, numerous homeless citizens received no warning or notice at all.

55.     On information and belief, those who did receive notice that their camps were impermissible were not warned of the City's plan to seize and destroy property, nor did the notice afford any homeless citizens an opportunity to contest the planned seizure and destruction.  Rather, the "warnings" were general warnings that they should leave the site.

56.     The APD and ADPS seized and destroyed homeless citizens' property at multiple campsites on the north end of Akron, including near Summit Street, Furnace Street, Howard Street, and the railroad.

57.     City officials acknowledged that the property sweeps resulted in the destruction of property: "Items taken in the sweep were thrown away, city officials said." Jim Carney, *Akron, Nonprofit Groups Discuss Moving Homeless Relief Away from Northside Area*, Akron Beacon J., Dec. 2, 2013.[4]

58.     The sweeps were an "effort" by APD that "was done in cooperation with various city entities," under the supervision of Defendants Nice, Sandor, and Eaton.

### Post-Nov. 6, 3013 Property Sweeps

59.     On information and belief, the City and its agents seized and destroyed property from multiple homeless campsites in or around December 2014.

60.     On information and belief, the City and its agents seized and destroyed property from multiple homeless campsites in or around March 2014.

61.     On information and belief, the City and its agents seized and destroyed property from multiple homeless campsites on or around September 5, 2014.

62.     On information and belief, numerous homeless citizens received no warning or notice at all.

63.     On information and belief, those who did receive notice that their camps were impermissible were not warned of the City's plan to seize and destroy property, nor did the notice afford any homeless citizens an opportunity to contest the planned seizure and destruction.  Rather, the "warnings" were general warnings that they should leave the site.

---

[4] *Available at* http://www.ohio.com/news/local/akron-nonprofit-groups-discuss-moving-homeless-relief-away-from-northside-area-1.449305.

**The City's Policy of Seizure and Destruction of Plaintiffs' Property Without Adequate Notice and a Hearing Deprives Plaintiffs of Shelter and Valuable Personal Items**

64.     The APD and ADPS conducted the November 6, 2013 sweep at the onset of winter.

65.     The APD and ADPS knew or reasonably should have known that seizing and destroying homeless citizens' shelter, clothing, and winter gear prior to dangerously cold temperatures and extreme weather conditions would leave the homeless citizens more vulnerable to harm.

66.     The APD and ADPS knew or reasonably should have known that seizing and destroying homeless citizens' shelter during all aforementioned property sweeps would also cause great harm to the Plaintiffs.

67.     The APD and ADPS knew or reasonably should have known that seizing personal documents and mementos would cause mental anguish.

68.     Defendants acted with deliberate indifference to the constitutional rights and survival needs of the homeless citizens.

**Unconstitutional Seizure and Destruction of Mr. Moe's Personal Belongings**

69.     As a direct result of the City's policies and practices, APD and ADPS seized and destroyed all of Mr. Moe's personal belongings including his tent, which was his residence at the time, and his financial documents, military documents, and countless personal items, during the November 6, 2013 sweep.

70.     As a direct result of the City's policies and practices, APD and ADPS did not provide Mr. Moe with notice that his property would be destroyed.

71.     As a direct result of the City's policies and practices, APD and ADPS did not provide Mr. Moe with an opportunity to contest the seizure and destruction of his property, nor to reclaim his property after the seizure.

72.     Mr. Moe has not been able to recover any of his belongings after the November 6, 2013 sweep.

73.     The APD and ADPS conducted the November 6, 2013 sweep at the onset of winter.  The APD and ADPS knew or reasonably should have known that taking shelter, clothing, and winter gear prior to dangerous temperature drops and extreme weather conditions would leave Mr. Moe more vulnerable to harm.

<u>**Unconstitutional Seizure and Destruction of**</u>
<u>**Mr. Blosser's Personal Belongings**</u>

74.     As a direct result of the City's policies and practices, APD and ADPS seized and destroyed Mr. Blosser's property on November 6, 2013.  The APD and ADPS seized and destroyed Mr. Blosser's tent, which was his residence at the time, and his military discharge papers, his food, his pallets, his clothing, and his tenting supplies during the property sweep.

75.     As a direct result of the City's policies and practices, APD and ADPS never provided notice to Mr. Blosser that his property would be seized and destroyed. The APD and ADPS also did not inform Mr. Blosser how he could object to the seizure and destruction of his property or how he could recover items after they were confiscated by APD officers.

76.     As a direct result of the City's policies and practices, Mr. Blosser did not recover any items seized by the APD and ADPS.

77.     Mr. Blosser lives in constant fear that the APD and ADPS will seize and destroy his tent and personal belongings again.

78.     Out of fear of further APD and ADPS sweeps, Mr. Blosser waited seven days before attempting to procure another tent.  He was in the freezing elements.  It has been very difficult for Mr. Blosser to replace his tenting supplies, afford new clothes, and replace his government-issued documents after the sweeps.

79.     The APD and ADPS conducted the November 6, 2013 sweep at the onset of winter.  The APD and ADPS knew or reasonably should have known that taking shelter, clothing, and winter gear prior to dangerous temperature drops and extreme weather conditions would leave Mr. Blosser more vulnerable to harm.

### Unconstitutional Seizure and Destruction of<br>Mr. Bratcher's Personal Belongings

80.     As a direct result of the City's policies and practices, APD and ADPS seized and destroyed Mr. Bratcher's property on November 6, 2013.  The APD and ADPS destroyed Mr. Bratcher's tent, which was his residence at the time, and his clothing, mail, and other personal effects during the property sweep.

81.     As a direct result of the City's policies and practices, APD did not provide Mr. Bratcher adequate notice that they intended to seize and destroy his property.

82.     The APD and ADPS never informed Mr. Bratcher how he could object to the seizure and destruction of his property or how he could recover items after they were confiscated by APD officers.

83.     As a direct result of the City's policies and practices, Mr. Bratcher could not recover any items seized by APD and ADPS.

84.     Mr. Bratcher lives in constant fear that the APD and ADPS will seize and destroy his tent and personal belongings again.

85.     The APD and ADPS conducted the November 6, 2013 sweep at the onset of winter.  The APD and ADPS knew or reasonably should have known that taking shelter, clothing, and winter gear prior to dangerous temperature drops and extreme weather conditions would leave Mr. Bratcher more vulnerable to harm.

### Unconstitutional Seizure and Destruction of Mr. Buker's Personal Belongings

86.     On or about November 5, 2013, an APD officer informed Mr. Buker of the sweep planned for the next day.  This officer advised Mr. Buker to move his tent, tarp, and personal belongings.

87.     Mr. Buker packed up his tent, tarp, and personal property, and he placed them under a tree some distance away from the campsite where the APD officer indicated the sweep would occur.

88.     Nonetheless, and as a direct result of the City's policies and practices, APD and ADPS seized and destroyed Mr. Buker's tent, which was his residence at the time, and his tarp, sleeping bags, clothing, and phone during the November 6, 2013 sweep.

89.     As a direct result of the City's policies and practices, Mr. Buker was provided inadequate notice that his property would be seized and destroyed by APD and ADPS.

90.     Defendants denied Mr. Buker the opportunity to contest the seizure or reclaim his property.

91.     Mr. Buker was unable to recover any of his personal items, despite attempting to do so.

92.     Two days after his property was taken, Mr. Buker went to the police station to report the seizure of his property.

93.     The APD employees informed Mr. Buker that items taken from the campsites were thrown in the dump.

94.     Mr. Buker lives in constant fear that the APD and ADPS will seize and destroy his tent and personal belongings again.

95.     The APD and ADPS conducted the November 6, 2013 sweep at the onset of winter.  The APD and ADPS knew or reasonably should have known that taking shelter, clothing, and winter gear prior to dangerous temperature drops and extreme weather conditions would leave Mr. Buker more vulnerable to harm.

### Unconstitutional Seizure and Destruction of Mr. Cosgray's Personal Belongings

96.     As a direct result of the City's policies and practices, APD and ADPS seized and destroyed Mr. Cosgray's property in September of 2013.  The APD and ADPS seized and destroyed Mr. Cosgray's tents, which were his residence at the time, and his fishing gear, sleeping bag, clothing, and important documents, including his birth certificate and his children's addresses, during the property sweep.

97.     As a direct result of the City's policies and practices, APD did not provide Mr. Cosgray with notice that they intended to seize and destroy his property.

98.     The APD and ADPS never informed Mr. Cosgray how he could object to the seizure and destruction of his property or how he could recover items after they were confiscated by APD officers.

99.     As a direct result of the City's policies and practices, Mr. Cosgray did not recover any items seized by the APD and ADPS.

100.     Mr. Cosgray lives in constant fear that the APD and ADPS will seize and destroy his tent and personal belongings again.

101.     The APD and ADPS knew or reasonably should have known that taking shelter, clothing, and important documents would leave Mr. Cosgray more vulnerable to harm.

### Unconstitutional Seizure and Destruction of Ms. Gould's and Mr. Usner's Personal Belongings

102.     As a direct result of the City's policies and practices, APD raided Ms. Gould's and Mr. Usner's campsite in early March 2014.

103.     The APD seized and destroyed Ms. Gould's and Mr. Usner's tents, which were their residence at the time, and their clothes, mp3 player, hospital scrubs, and personal journal.

104.     Upon information and belief, APD continued the practice of seizing and destroying Ms. Gould and Mr. Usner's tents and other personal property in both March and August of 2014.

105.     As a direct result of the City's policies and practices, APD did not provide notice to Ms. Gould or Mr. Usner that they would seize and destroy their property on either occasion.

106.     As a direct result of the City's policies and practices, APD did not provide Ms. Gould or Mr. Usner an opportunity for a hearing or an opportunity to reclaim their property on either occasion.

107.    Ms. Gould and Mr. Usner live in constant fear that the APD and ADPS will seize and destroy their tent and personal belongings again.

## Unconstitutional Seizure and Destruction of
## Mr. Littleton's Personal Belongings

108.    As a direct result of the City's policies and practices, APD and ADPS seized and destroyed Mr. Littleton's property on or about September 5, 2014.  The APD and ADPS seized and destroyed Mr. Littleton's tent, which was his residence at the time, and his clothing, mail and other important documents during the property sweep.

109.    Mr. Littleton saw the APD in the area of his campsite on the morning of September 5, 2014, at approximately 7:30 a.m.  As a direct result of the City's policies and practices, APD did not provide Mr. Littleton with notice that they intended to seize and destroy his property.

110.    The APD and ADPS never informed Mr. Littleton how he could object to the seizure and destruction of his property or how he could recover items after they were confiscated by APD officers.

111.    As a direct result of the City's policies and practices, Mr. Littleton did not recover any items seized by the APD and ADPS.

112.    Mr. Littleton lives in constant fear that the APD and ADPS will seize and destroy his tent and personal belongings again.

113.    The APD and ADPS knew or reasonably should have known that taking shelter, clothing, and important documents would leave Mr. Littleton more vulnerable to harm.

## Unconstitutional Seizure and Destruction of
## Mr. Lynch's Personal Belongings

114.     As a direct result of the City's policies and practices, APD and ADPS seized and destroyed Mr. Lynch's property on November 6, 2013. The APD and ADPS seized and destroyed Mr. Lynch's tents, which were his residence at the time, and his radio, sleeping bag, clothing, and important documents, including his birth certificate, during the property sweep.

115.     As a direct result of the City's policies and practices, APD and ADPS never provided notice to Mr. Lynch that his property would be seized and destroyed. The APD and ADPS never informed Mr. Lynch how he could object to the seizure and destruction of his property or how he could recover items after they were confiscated by APD officers.

116.     As a direct result of the City's policies and practices, Mr. Lynch did not recover any items seized by the APD and ADPS.

117.     Mr. Lynch lives in constant fear that the APD and ADPS will seize and destroy his tent and personal belongings again.

118.     The APD and ADPS conducted the November 6, 2013 sweep at the onset of winter. The APD and ADPS knew or reasonably should have known that taking shelter, clothing, and winter gear prior to dangerous temperature drops and extreme weather conditions would leave Mr. Lynch more vulnerable to harm.

## Unconstitutional Seizure and Destruction of
## Mr. Suppan's Personal Belongings

119.     On or about November 5, 2013, an APD officer informed Mr. Suppan of APD's plans to conduct homeless property sweeps in the near future.

120.     On the morning of November 6, 2013, the officer informed Mr. Suppan that APD would be conducting the sweep in approximately an hour.

121.     Mr. Suppan packed up his tent, tarp, and personal property, and he placed them under a tree some distance away from the campsite where the APD officer indicated the sweep would occur.  Mr. Suppan did not have sufficient time to move all of his belongings to another campsite prior to the planned property sweep.

122.     As a direct result of the City's policies and practices, APD and ADPS seized and destroyed Mr. Suppan's tent, which was his residence at the time, and his clothes, shoes, marriage and divorce papers, toiletries, jewelry, phones and chargers, and winter supplies including warm boots, during the November 6, 2013 sweep.

123.     As a direct result of the City's policies and practices, Mr. Suppan was provided with insufficient notice that his property would be seized and destroyed by APD and ADPS, and he was not given the opportunity to contest the seizure or reclaim his property.

124.     Mr. Suppan was not able to recover any of his belongings after the sweep.

125.     Without winter gear, Mr. Suppan was exposed to the elements of the Akron fall and winter for the remainder of November, December, January, and February.

126.     As a consequence, Mr. Suppan was hospitalized for frostbite.  As a result of the frostbite, Mr. Suppan had two toes amputated.  He was hospitalized for over a month and spent significant time in a rehabilitation center afterwards, where he had to learn how to walk again.  Mr. Suppan continues to suffer severe pain in both feet and has difficulty walking and maintaining his balance.

127.    Prior to the sweep, Mr. Suppan performed odd jobs as a handyman and physical laborer.  As a result of the City's actions, he will be unable to do this kind of work again and has applied for disability benefits to meet his survival needs.

128.    The APD and ADPS conducted the November 6, 2013 sweep at the onset of winter.  The APD and ADPS knew or reasonably should have known that taking shelter, clothing, and winter gear prior to dangerous temperature drops and extreme weather conditions would leave Mr. Suppan more vulnerable to harm.

## Unconstitutional Seizure and Destruction of Mr. Thompson's Personal Belongings

129.    As a direct result of the City's policies and practices, APD seized and destroyed Mr. Thompson's personal belongings from the Furnace Street area during the November 6, 2013 sweep.

130.    As a direct result of the City's policies and practices, APD did not provide Mr. Thompson with adequate notice that they intended to seize and destroy his property.

131.    As a direct result of the City's policies and practices, APD did not provide Mr. Thompson an opportunity for a hearing or the opportunity to reclaim his property.

132.    On information and belief, APD seized and destroyed Mr. Thompson's tent, which was his residence at the time, and his personal property that was kept at the campsite.

133.    Mr. Thompson lives in constant fear that the APD and ADPS will seize and destroy his tent and personal belongings again.

134.    The APD and ADPS conducted the November 6, 2013 sweep at the onset of winter.  The APD and ADPS knew or reasonably should have known that taking

shelter, clothing, and winter gear prior to dangerous temperature drops and extreme weather conditions would leave Mr. Thompson more vulnerable to harm.

## CLASS ACTION ALLEGATIONS

135.    Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(c)(4) on behalf of themselves and all others similarly situated, seeking equitable, declaratory, and injunctive relief.  Plaintiffs seek damages for themselves only individually and not for the class.

136.    The proposed class includes homeless individuals and families, as defined by 42 U.S.C. § 11302, located in Akron from October 1, 2013, to the present, whose property was seized and destroyed by Defendants or are at risk of having their property seized and destroyed by Defendants pursuant to Defendants' policies and practices.

137.    "Homeless" individuals and families are defined, pursuant to 42 U.S.C. § 11302, as those:

> a.    who lack a regular, fixed, or adequate nighttime residence;
>
> b.    whose primary nighttime residence is a public or private place not designed or ordinarily used as regular sleeping accommodations for human beings; or
>
> c.    who live in publically or privately operated shelters that are designated to provide temporary living arrangements.

138.    Upon information and belief, the members of the class are so numerous that individual joinder of all members of the class would be impracticable.  Current data indicates that there are between 100 to 250 chronically homeless individuals in Akron with another 600 to 700 sporadically homeless people.  Joinder is also impracticable

because many of the class members are unaware of their legal rights and are unlikely to seek legal representation.

139.    Common questions of law and fact exist as to all members of the class and predominate over any questions that affect sole individual members of the class. The questions of law and fact common to the class are:

a.    the legality of Defendants' seizures and destruction of property owned by Plaintiffs and members of the class;

b.    the failure of Defendants to provide Plaintiffs and members of the class sufficient notice before the seizure and destruction of their property;

c.    the existence of the policy, pattern, and practice of Defendants to seize and destroy property owned by Plaintiffs and members of the class;

d.    whether Defendants' seizures and destruction of property owned by Plaintiffs and members of the class violated their Fourth Amendment right to be free of unreasonable seizures;

e.    whether Defendants' seizures and destruction of property owned by Plaintiffs and members of the class violated their Fourteenth Amendment rights by depriving them of property without due process of law;

f.    whether Defendants' seizures and destruction of property owned by Plaintiffs and members of the class violated their civil rights pursuant to 42 U.S.C § 1983 and their substantive due process rights under the Fourteenth Amendment by depriving them of

fundamental rights—their homes and their belongings—which are
vital to their emotional and physical well-being;

g.    whether Defendants' seizures and destruction of property owned by
Plaintiffs and members of the class violated their rights under
Article One, Section Fourteen of the Ohio Constitution to be free of
unreasonable seizures;

h.    whether Defendants' seizures and destruction of property owned by
Plaintiffs and members of the class violated their due process rights
under Article One, Section Sixteen of the Ohio Constitution; and

i.    whether Defendants' seizures and destruction of property owned by
Plaintiffs and members of the class violated their right to
compensation for the government's taking of private property
under Article One, Section Nineteen of the Ohio Constitution.

140.    The claims of the named Plaintiffs are typical of the claims of the class.
Defendants have subjected the named Plaintiffs and other members of the class to
identical or substantially similar unlawful policies and practices.  Defendants' continued
pursuit of these unlawful policies and practices puts Plaintiffs and other class members
at risk of the further infringement of their rights by Defendants.

141.    Plaintiffs will fairly and adequately protect the interests of the members
of the class.  Plaintiffs have no interests that are adverse or antagonistic to those of the
class because all homeless individuals will benefit from a change to Defendants' policies
and practices.

142.    Plaintiffs have retained as counsel the Milton A. Kramer Law Clinic
Center of Case Western Reserve University School of Law.    Multiple attorney

supervisors in the Law Clinic are experienced in class action litigation and can adequately represent the interests of the class members as well as those named as plaintiffs.

143.    Defendants have acted on grounds generally applicable to both the named Plaintiffs and other class members.  Thus, final declaratory and injunctive relief is appropriate with respect to members of the class.  The injuries suffered by the named Plaintiffs and other class members as a result of Defendants' actions are capable of repetition yet may evade review, thereby making individual and class relief appropriate.

144.    Plaintiffs envision no difficulty in the management of this litigation as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983
### and the Fourth Amendment to the United States Constitution
### (Right to Be Secure from Unreasonable Seizures)

145.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

146.    Defendants violated Plaintiffs' Fourth Amendment rights to be free from unreasonable seizure of their property by confiscating and then destroying Plaintiffs' property often without notice of the seizure of the property, let alone notice of the destruction of the property.

147.    Defendants seized Plaintiffs' property pursuant to a City policy and practice of seizing and destroying the property of homeless citizens.

148.    The APD and ADPS, which executed the property seizures, acted pursuant to a City policy and practice and with the specific intent to deprive Plaintiffs of their constitutional rights to be secure in their property.

149.    Defendants acted unreasonably in seizing and destroying the Plaintiffs' property without giving them notice of the removal or destruction of their property.

150.    Defendants acted unreasonably by not providing the Plaintiffs with an opportunity to retrieve their property before it was destroyed.  All property was seized and destroyed immediately.

151.    As a direct and proximate consequence of the policies and acts of Defendants and their agents and employees, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for that loss, and declaratory and injunctive relief to prevent the recurrence of Defendants' deprivations.

**SECOND CAUSE OF ACTION**
**Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983**
**and the Fourteenth Amendment to the United States Constitution**
**(Right to Procedural Due Process)**

152.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

153.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits Defendants from depriving Plaintiffs of life, liberty, or property without due process of law.

154.    Plaintiffs have a recognized property interest in their tents and personal belongings stored in these tents.  This property interest is protected by the Fourteenth Amendment.

155.     Defendants knowingly disregarded Plaintiffs' constitutional right to notification prior to seizing and destroying their personal property.

156.     Defendants never gave Plaintiffs reasonable notice prior to the seizure and destruction of their personal property.

157.     The property sweeps conducted by Defendants deprived Plaintiffs of their property interest because Plaintiffs' personal property was summarily seized and destroyed.

158.     Defendants violated Plaintiffs' procedural due process rights when they seized and destroyed Plaintiffs' personal property without giving Plaintiffs notice of the impending seizure and destruction, which would have afforded Plaintiffs an opportunity to challenge the seizure and destruction or reclaim their belongings.

159.     Defendants' policy and practice of seizing and destroying homeless citizens' property without any notice has no relation to any legitimate local government purpose.  Defendants do not have a compelling state interest or rational basis for the policy and practice.

160.     As a direct and proximate consequence of the policies, practices, and acts of Defendants and their agents and employees, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for that loss and declaratory and injunctive relief to prevent the recurrence of Defendants' deprivations.

### THIRD CAUSE OF ACTION
### Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983
### and the Fourteenth Amendment to the United States Constitution
### (Right to Substantive Due Process)

161.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

162.     Defendants' policy and practice of seizing and destroying Plaintiffs' property deprives Plaintiffs of fundamental rights—their homes and their belongings—which are vital to their emotional and physical well-being.

163.     Defendants knew or should have reasonably known that depriving this vulnerable group of individuals of their homes and personal property would threaten their ability to survive.

164.     Defendants placed Plaintiffs in danger of substantial harm, and Plaintiffs suffered substantial harm as a result of Defendants' policy and practice.

165.     Plaintiffs' interests in survival outweigh Defendants' governmental interests in conducting their policy and practice.

166.     As a direct and proximate consequence of the policies and acts of Defendants and their agents and employees, Plaintiffs have suffered and continue to suffer loss of their property and are entitled to compensatory damages for their property and declaratory and injunctive relief to prevent the recurrence of Defendants' deprivations.

## FOURTH CAUSE OF ACTION
## Violation of Civil Rights Guaranteed Under the Ohio Constitution
### (Article One, Section Fourteen)

167.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

168.    The Ohio Constitution guarantees the right of people to be secure against unreasonable seizures.  Art. I, § 14.

169.    The Ohio Constitution further guarantees that warrants for seizures shall not issue absent probable cause and a particular description of the intended seizure. Art. I, § 14.

170.    Defendants' policy and practice of seizing and destroying Plaintiffs' property violated Plaintiffs' rights to be secure in their persons, houses, papers, and possessions, against unreasonable seizures.

171.    Defendants' policy and practice further violated Plaintiffs' rights under Article I, Section 14 by subjecting them to seizures absent any warrant particularly describing the person and things to be seized, and absent any warrant at all.

172.    As a direct and proximate consequence of the policies and acts of Defendants and their agents and employees, Plaintiffs have suffered and continue to suffer loss of their property and are entitled to compensatory damages for their property and declaratory and injunctive relief to prevent the recurrence of Defendants' deprivations.

**FIFTH CAUSE OF ACTION**
**Violation of Civil Rights Guaranteed Under the Ohio Constitution**
**(Article One, Section Sixteen)**

173.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

174.    The Ohio Constitution guarantees due process of law for injuries to citizens' property.  It guarantees the administration of justice without denial or delay for such injury.  Art. I, § 16.

175.    On information and belief, Defendants' policy and practice of seizing and destroying Plaintiffs' property without notice and an opportunity for a hearing has deprived Plaintiffs of their due process rights.

176.    As a direct and proximate consequence of the policies and acts of Defendants and their agents and employees, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and declaratory and injunctive relief to prevent the recurrence of the Defendants' deprivations.

**SIXTH CAUSE OF ACTION**
**Violation of Civil Rights Guaranteed Under the Ohio Constitution**
**(Article One, Section Nineteen)**

177.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

178.    The Ohio Constitution guarantees that compensation be made to the owner when private property is seized by the government.  Art. I, § 19.

179.    On information and belief, Defendants' policy and practice of seizing and destroying Plaintiffs' property has never included compensation for the property seized from the affected homeless citizens.

31

180.     Defendants' policy and practice of seizing and destroying Plaintiffs' property without compensation violated their constitutional rights under Article I, Section 19.

181.     As a direct and proximate consequence of the policies and acts of Defendants and their agents and employees, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs request judgment against Defendants as follows:

   a.     A declaration that the City's policy and practice of seizing and destroying homeless citizens' property with insufficient or no notice, without a hearing, and without the opportunity to reclaim such property, violates the United States and Ohio Constitutions;

   b.     A permanent injunction preventing the City from continuing to execute its policy and practice of destroying homeless citizens' property with insufficient or no notice, without a hearing, and without the opportunity to reclaim such property;

   c.     Compensatory and consequential damages for each individually named Plaintiff in an amount to be determined at trial;

   d.     Punitive damages on all claims allowed by law, in an amount to be determined at trial;

   e.     Attorney fees and costs associated with this action; and

f.      Any further relief as this Court deems just and proper and any other

relief as allowed by law.

Respectfully submitted,

/s/Avidan Y. Cover
Avidan Y. Cover (0087534)
CASE WESTERN RESERVE UNIVERSITY
SCHOOL OF LAW
MILTON A. KRAMER LAW CLINIC CENTER
11075 East Boulevard
Cleveland, Ohio 44106
(216) 368-2766
avidan.cover@case.edu

Nathaniel Ehrman (pending permission to
  participate under Local R. 83.6)
Donielle Robinson (pending permission to
  participate under Local R. 83.6)
Rebecca J. Sremack (pending permission
  to participate under Local R. 83.6)
Emma Victorelli (pending permission to
  participate under Local R. 83.6)
*Attorneys and Legal Interns for Plaintiffs*

DATED:  October 3, 2014